UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY MCFARLAND,

        Plaintiff,

vs.

WELLS FARGO HOME MORTGAGE, INC.,

        Defendant.
_____/

Case No. 1:05-CV-673

Hon. Hugh W. Brenneman, Jr.

**OPINION**

Plaintiff seeks damages and declaratory relief pursuant to the Electronic Funds Transfer Act (sometimes referred to as "EFTA"), 15 U.S.C. § 1693 *et seq*. This matter is now before the court on defendant's motion for summary judgment (docket no. 11).

**I.**  **Plaintiff's allegations**

It is undisputed that plaintiff was delinquent in making mortgage payments to defendant Wells Fargo Home Mortgage, Inc., a California corporation which is a division of Wells Fargo Bank, N.A. Plaintiff's delinquency resulted in a temporary forbearance agreement, by which plaintiff agreed to a payment plan, with monthly payments scheduled from September 30, 2004 through February 25, 2006. *See* Temporary Forbearance Agreement (Sept. 22, 2004) attached to complaint as Exh. A. Under the terms of the forbearance agreement, a revised mortgage payment plan, plaintiff orally authorized defendant to make an electronic transfer of funds in the amount of $1,947.15 from his credit union account on September 30, 2004. (Defendant asserts that initially this withdrawal was to be made on an earlier date but the date was changed to September 30 due to a lack of funds. Irregardless, the forbearance agreement drafted by defendant and dated September

22, 2004, shows the first payment date to be September 30, 2004.) The temporary forbearance agreement requested plaintiff to mail his payments to a Wells Fargo Home Mortgage address in Carol Stream, Illinois. It also stated, however, that, "[i]f you prefer, we can arrange a Wells Fargo Easy Payment (SM) option in which you can schedule the above payments to be withdrawn from your bank account automatically." Plaintiff agreed to make 15 subsequent monthly payments of $833.66 and 1 monthly payment of $774.96.

Plaintiff sets forth the following allegations in his complaint. On September 22, 2004, he orally authorized defendant to make an electronic transfer (withdrawal) of funds in the amount of $1,947.17 from his credit union account, "which was to be a one-time, non-recurring event, and was to occur on September 30, 2004." Compl. at ¶ 9. On September 24th, defendant attempted to make an unauthorized electronic fund transfer from plaintiff's credit union account, which caused plaintiff's account to be overdrawn and incur fees in the amount of $25.00. *Id.* at ¶ 10. Then, on September 29th, defendant attempted to make an unauthorized electronic fund transfer from the account, causing the account to be overdrawn again and incurring fees of $25.00. *Id.* at ¶ 11. On September 30th, defendant managed to effectuate the electronic transfer of funds in the amount of $1,947.17 which had been authorized by plaintiff on September 22nd. *Id.* at ¶ 12. Then, defendant attempted to make three additional unauthorized electronic fund transfers from the credit union account on October 1st, 6th and 14th. *Id.* at ¶¶ 13-15. Each attempted transfer caused plaintiff's account to be overdrawn, incurring fees of $25.00 per attempt. *Id.* Defendant reimbursed plaintiff "for some, but not all, of the fees incurred by [him] in connection with [defendant's] repeated attempts to make unauthorized electronic fund transfers from [his] credit union account." *Id.* at ¶ 16.

Plaintiff alleges that "[d]efendant repeatedly violated the EFTA, 15 U.S.C. § 1693e." Compl. at ¶ 20. He seeks a declaratory judgment that defendant violated the statute, along with actual damages, statutory damages, costs and attorney's fees. *Id.* at ¶ 20.

## II.     Legal standard

Defendant has styled its motion as one for "summary judgment" pursuant to Fed. Rules Civ. Proc. 12(b)(1) and 12(b)(6). However, in its brief, defendant cites the legal standard applicable to a motion for judgment on the pleadings pursuant to Fed. Rules Civ. Proc. 12(c) and presents arguments under that court rule. Defendant's Brief at 3. Accordingly, the court will review the motion as one for judgment on the pleadings pursuant to Fed. Rules Civ. Proc. 12(c).

Rule 12(c) provides as follows:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

"The obvious purpose of Rule 12(c) of the Rules of Civil Procedure is to save time and expenses in cases wherein the ultimate facts are not in dispute." *Ulen Contracting Corporation v. Tri-County Electric Cooperative*, 1 F.R.D. 284, 285 (W.D. Mich. 1940). When the court determines a motion for judgment on the pleadings, all well-pleaded material allegations of the non-movant's pleadings must be taken as true. *See United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.*

## III.     Discussion

Plaintiff seeks relief for an alleged violation of EFTA. Civil liability under EFTA is

set forth at 15 U.S.C. § 1693m(a), which provides in pertinent part that:

> [A]ny person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to such consumer in an amount equal to the sum of--
>
> (1) any actual damage sustained by such consumer as a result of such failure;
>
> (2)    (A) in the case of an individual action, an amount not less than $100 nor greater than $1,000 . . .
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

In *Wachter v. Denver National Bank*, 751 F. Supp. 906 (D. Colo. 1990), the court summarized the scope and purpose of EFTA:

> The Act was designed to create rights for consumers in an era in which banking could be conducted almost exclusively through machines. S.Rep. No. 915, 95th Cong., 2d Sess. at 3, reprinted in 1978 U.S.Code Cong. & Admin.News at 9273, 9405. The absence of personal contact was seen as a disadvantage in an automated system that is much more vulnerable to fraud, embezzlement and unauthorized use than traditional payment methods. *See Kashanchi v. Texas Commerce Medical Bank*, N.A., 703 F.2d 936, 940 (5th Cir.1983), quoting H.R.Rep. No. 1315, 95th Cong., 2d Sess. 2 (1978). The Act was passed to alleviate this concern and "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic transfer systems." 15 U.S.C. § 1693. Accordingly, liability under the act is predicated on a finding that an electronic fund transfer has occurred. *Spain v. Union Trust*, 674 F.Supp. 1496, 1498 (D.Conn.1987).

*Wachter*, 751 F.Supp. at 908.

Plaintiff alleges that defendant violated 15 U.S.C. § 1693e, which sets forth the procedure for obtaining a "preauthorized electronic fund transfer." Compl. at ¶ 20. A "preauthorized electronic fund transfer" is defined as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(9). Section 1693e provides in pertinent part as follows:

> (a) A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall

4

> be provided to the consumer when made.  A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer.  The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

15 U.S.C. § 1693e.  Plaintiff contends that defendant violated this statute because it did not obtain his authorization "in writing" before attempting to make the electronic fund transfers on September 24th and 29th, and on October 1st, 6th and 14th.

It is undisputed that plaintiff did not give defendant written instructions to make recurring preauthorized electronic transfers as contemplated by § 1693e(a).  In his complaint, plaintiff alleges that on September 22, 2004, he "orally authorized" defendant to transfer $1,947.15 from his credit union account.  Compl. at ¶¶ 7, 9.  The transfer consisted of "a one-time, non-recurring event" to occur on September 30, 2004.  *Id.*  The defendant concurs.  Defendant's Motion for Summary Judgment, ¶ 4.  In short, plaintiff orally authorized only a single electronic transfer on September 30th.

The question for the court is whether defendant's unsuccessful attempts to transfer the $1,947.15 payment violated the procedures set forth in § 1693e(a).  As an initial matter, EFTA defines a "financial institution" as "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer."  15 U.S.C. § 1693a(8).  An "account" is defined as "a demand deposit, savings deposit, or other asset account."  15 U.S.C. § 1693a(2).  Here, defendant is not a financial institution with respect to plaintiff because it did not hold "a demand deposit, savings deposit, or other asset account" belonging to plaintiff.  Accordingly, defendant is

not liable to plaintiff in the role of a financial institution under EFTA.  Defendant's liability, if any, would arise because it is a "person who fails to comply with any provision of [EFTA]" pursuant to § 1693m(a).

Plaintiff's singular claim against defendant is limited to defendant's unsuccessful attempts to transfer the $1,947.15 payment on five occasions (other than September 30th) and the damages caused by the attempted transfers. To prevail in his claim, plaintiff must demonstrate that defendant violated EFTA, specifically § 1693e(a).  The court, however, concludes that defendant's attempted transfers did not violate this statute.

Defendant did not violate § 1693e(a) because no electronic fund transfers occurred on the five days in question: September 24th, 29th and October 1st, 6th or 14th.  Under EFTA, an "electronic fund transfer" is defined as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(6); *see also* Regulation E, 12 C.F.R., Part 205.  EFTA's definition of an electronic fund transfer is very specific and does not include an "attempted" or "unsuccessful" transfer, as occurred here.  *See, e.g., Spain*, 674 F.Supp. at 1498 ("liability under [EFTA] is predicated on a finding that an electronic fund transfer has occurred"). Congress is well aware of the concept of "attempt" and certainly could have made the statute applicable to attempted transfers had it wanted to do so.  The statute is limited to accomplished transfers – meaning that funds have moved from one entity to another.  This court will not presume to expand the reach of the congressional statute, either by including an act not covered (an attempt) or trying to define the parameters of that act.

6

The court declines plaintiff's invitation to adopt the reasoning of the Tennessee Supreme Court in *Curde v. Tri-City bank & Trust Company*, 826 S.W.2d 911 (Tenn. 1992), that "a completed transfer of funds is not necessary for coverage under [EFTA]." *Curde*, 826 S.W.2d at 915. In *Curde*, the court determined that an attempted deposit of a check via an automated teller machine (ATM) was an electronic fund transfer covered by EFTA. In reaching this conclusion, the court found that the statutory language was unclear as to whether EFTA applied to check deposits via an ATM and then performed a lengthy review of EFTA's legislative history. *Id.* at 912-15.

It is unnecessary for this court to reach and review the legislative intent of EFTA because the statute's definition of an electronic fund "transfer" is plain and unambiguous. It requires a transfer of funds. *Black's Law Dictionary,* Fifth Edition, defines the word "transfer" to mean: "To convey or remove from one place, person, etc., to another; . . . to change over the possession or control" of something. *Black's Law Dictionary* also states that the word "transfer," as used in the UCC means "to describe the act which transfers an interest in an instrument to another."

The Sixth Circuit cautions courts from reviewing the legislative history when the statutory text is clear:

> First-and most significant-even assuming that the statutory purpose may be characterized as plaintiff suggests, because the statute is unambiguous it is inappropriate for us even to consider it. In directing the court's attention to legislative intent, plaintiff overlooks the well-established and long-recognized rule that, where a statute is free of ambiguity, it is to be applied as written. The Supreme Court has instructed ad nauseam: "[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others," which is "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). The Court has made clear that "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Id.* at 254. *See also United States v. Gonzales*, 520 U.S. 1, 6, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history."); *Ratzlaf v. United States*, 510 U.S. 135,

> 147-48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)( "[W]e do not resort to legislative history to cloud a statutory text that is clear."); *Barnhill v. Johnson*, 503 U.S. 393, 401, 112 S.Ct. 1386, 118 )) L.Ed.2d 39 (1992)("To begin, we note that appeals to statutory history are well taken only to resolve statutory ambiguity.").

*Cox v. Mayer*, 332 F.3d 422, 425-26 (6th Cir. 2003).

### IV.  Conclusion

Plaintiff's complaint alleges a violation of § 1693e(a).  While plaintiff may have a claim for the overdraft fees that resulted from defendant's unsuccessful attempts to transfer the $1,947.15 payment, his remedy does not lie in a claim brought against defendant pursuant to § 1693e(a).  Viewing all of the well-pleaded material allegations of plaintiff's pleadings as true, the court finds that defendant is entitled to judgment on this claim pursuant to Rule 12(c).  Defendant's motion (docket no. 11) will be **GRANTED**, and an order of dismissal consistent with this opinion shall be issued forthwith.

Dated:  September 29, 2006          /s/ Hugh W. Brenneman, Jr.
                                                  Hugh W. Brenneman, Jr.
                                                  United States Magistrate Judge